O

# United States District Court
# Central District of California

| | |
|---|---|
| TAYLER ORTIZ-DIXON et al., <br><br> Plaintiff, <br><br> v. <br><br> FEDEX GROUND PACKAGE SYSTEM, INC. et al., <br><br> Defendants. | Case No. 5:23-cv-01140-ODW (SPx) <br><br> **ORDER DENYING MOTION TO REMAND [15]; AND GRANTING STIPULATION TO STAY CASE [25]** |

## I. INTRODUCTION

On February 27, 2023, Plaintiff Tayler Ortiz-Dixon filed this putative Class Action Complaint in the Superior Court of the State of California, County of San Bernardino, against her employer, Defendant FedEx Ground Package System, Inc. (Notice of Removal ("NOR") Ex. A ("Compl."), ECF No. 1.)  On June 14, 2023, FedEx removed the instant action on the basis that this Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (NOR ¶ 8.)  Ortiz-Dixon now moves to remand this action for lack of subject matter jurisdiction. (Mot. Remand ("Motion" or "Mot."), ECF No. 15.)  For the reasons below, the Court **DENIES** Ortiz-Dixon's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

On February 27, 2023, Ortiz-Dixon filed this putative class action in San Bernardino County Superior Court. (NOR ¶ 1.) Ortiz-Dixon brings nine claims stemming from FedEx's alleged violations of the California Labor Code: (1) unfair competition; (2) failure to pay minimum wages; (3) failure to pay overtime wages; (4) failure to provide meal periods; (5) failure to provide rest periods; (6) failure to provide accurate itemized wage statements; (7) failure to reimburse employees for required expenses; (8) failure to pay timely wages; and (9) failure to pay sick pay wages. (*See* Compl. ¶¶ 46–120.) Ortiz-Dixon seeks to represent all current and former non-exempt employees of FedEx, excluding drivers, whom FedEx employed in California at any time "during the period beginning four (4) years prior" to the filing of the Complaint (the "Class"). (*Id.* ¶ 4.) The "Class Period" therefore begins on February 27, 2019. (*See id.*; NOR ¶ 23 n.6.)

On June 14, 2023, FedEx removed the action to federal court based on alleged CAFA subject matter jurisdiction. (NOR ¶ 8.) On October 4, 2023, upon the stipulation of the parties, Ortiz-Dixon filed a First Amended Complaint ("FAC") to add Eddie Ayala as a named plaintiff and class representative. (FAC, ECF No. 24.) Now, Ortiz-Dixon moves to remand the action back to state court on the basis that the aggregate amount in controversy does not meet CAFA's $5 million jurisdictional threshold. (*See generally* Mot.) The Motion is fully briefed. (Opp'n, ECF No. 16; Reply, ECF No. 17.)

## III. LEGAL STANDARD

Federal courts have subject matter jurisdiction only as authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

2

CAFA vests original jurisdiction in district courts to hear civil actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A); *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1220 (9th Cir. 2020). CAFA jurisdiction exists only over actions where the number of proposed class members is greater than 100. 28 U.S.C. § 1332(d)(5)(B).

Generally, a notice of removal filed in federal court must contain only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). But where a plaintiff contests, or the court questions, a defendant's allegations concerning the amount in controversy, both sides submit proof, and the court decides whether the defendant has proven the amount in controversy by a preponderance of the evidence. *Id.* at 88–89.

These procedures apply to the amount in controversy requirement in CAFA cases to the same extent they apply to ordinary diversity cases. "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the . . . theory of damages exposure." *Ibarra v. Manheim Invs.*, 775 F.3d 1193, 1198 (9th Cir. 2015). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197.

## IV.   DISCUSSION

As courts generally analyze diversity jurisdiction based on the factual circumstances existing at the time the plaintiff filed the suit, *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003), the Court directs its jurisdictional analysis to the initial complaint.

Ortiz-Dixon does not dispute CAFA's minimum diversity or numerosity elements. (*See* Mot. 1.) Accordingly, the only aspect of CAFA jurisdiction in dispute

here is whether FedEx has shown, by a preponderance of the evidence, that the amount in controversy exceeds CAFA's $5 million jurisdictional threshold.

In her Complaint, Ortiz-Dixon does not allege a specific amount of damages, but states that the aggregate Class claims is below CAFA's $5 million threshold required for federal jurisdiction. (Compl. ¶ 4.) However, FedEx argues on removal that just three of Ortiz-Dixon's nine claims put a total of $13,993,916 in controversy using only ten and a half months out of the alleged four-year Class Period ("FedEx's Calculation Period"). (NOR ¶¶ 23, 46.)

## A. Challenged Assumptions and Evidence

In arguing for remand, Ortiz-Dixon asserts that FedEx (i) uses an unreasonable violation rate; (ii) fails to support its calculations with sufficient competent evidence; and (iii) over-inflates the number of shifts in issue. She contends that, as a consequence, FedEx overstates the total amount in controversy.

### 1. *Violation Rate*

FedEx applies a 20% violation rate to calculate the amount in controversy for Ortiz-Dixon's missed meal period, missed rest break, and wage statement claims. (NOR ¶¶ 26, 32, 43; Opp'n 6–8.) Ortiz-Dixon contends that the Complaint's language does not support a 20% violation rate. (Mot. 9–10.)

"In determining the amount in controversy, courts first look to the complaint." *Ibarra*, 775 F.3d at 1197. To examine the reasonableness of an assumed violation rate, "the Ninth Circuit distinguishes between complaints of 'uniform' violations and those alleging a 'pattern and practice' of labor law violations." *Dobbs v. Wood Grp. PSN, Inc.*, 201 F. Supp. 3d 1184, 1188 (E.D. Cal. 2016) (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015)). If a plaintiff alleges a "uniform" practice of violation and "offers no competent evidence in rebuttal to a defendant's showing," courts have found a defendant's assumption of 100% violation rate reasonable. *Id.* On the other hand, a plaintiff's allegations of a "pattern and practice" of violating the Labor Code "does not mean *always*" violating Labor Code, so the removing party has

the "burden to show that its estimated amount in controversy relied on reasonable assumptions" regarding the violation rate, founded in the complaint. *Ibarra*, 775 F.3d at 1198–99.

In her Complaint, Ortiz-Dixon alleges that FedEx has a "policy and practice" of "fail[ing] to provide all the legally required off-duty meal and rest breaks," (Compl. ¶ 24); FedEx "engages in the practice of requiring" Ortiz-Dixon and the Class "to perform work off the clock[]," (*id.* ¶ 8); and "[f]rom time to time" requires Ortiz-Dixon and the Class to work during meal or rest breaks, (*id.* ¶¶ 11–12, 91, 95).

Allegations that a defendant engages in alleged conduct, but "does not necessarily always" engage in the alleged conduct, are generally considered "pattern and practice" allegations. *Ibarra*, 775 F.3d at 1198–99. For this type of allegations, courts often find violation rates of 20% reasonable. *See, e.g.*, *Kincaid v. Educ. Credit Mgmt. Corp.*, No. 2:21-cv-00863-TLN (JDPx), 2022 WL 597158, at *4 (E.D. Cal. Feb. 28, 2022) (finding a 20% meal period and rest period violation rate reasonable based on plaintiff's "pattern and practice" allegations); *Olson v. Becton, Dickinson & Co.*, No. 19-cv-865-MMA (BGSx), 2019 WL 4673329, at *4 (S.D. Cal. Sept. 25, 2019) (finding a 25% violation rate reasonable in light of the plaintiff's "pattern and practice" allegations). Having reviewed Ortiz-Dixon's allegations and the cases referenced above, the Court finds Ortiz-Dixon's specific factual allegations in this case sufficient to support the reasonableness of a 20% violation rate.

Ortiz-Dixon argues that her use of "from time to time" language in the Complaint makes a 20% violation rate unreasonable. (Mot. 10–12.) For example, Ortiz-Dixon alleges that "from time to time" she was "interrupted by work assignments while clocked out" for her meal break, (Compl. ¶ 8); "from time to time" she worked "in excess of four (4) hours without being provided at least (10) minutes" rest break, (*id.* ¶ 12); and "from time to time" FedEx failed to provide "complete and accurate wage statements," (*id.* ¶ 14). However, Ortiz-Dixon uses "from time to time" allegations coupled with "pattern and practice" allegations throughout the Complaint

to describe the frequency of FedEx's alleged violations. She fails to explain in her Motion why the language "from time to time" should override the "pattern and practice" of violations. Further, she does not explain how "from time to time" might mean something different than "pattern and practice," or why "from time to time" results in a lower violation rate than "pattern and practice" allegations, particularly as she uses the language together. As such, Ortiz-Dixon fails to disturb the Court's conclusion that a 20% violation rate, in this case, is reasonable.[2]

   2.   *Evidence*

Next, Ortiz-Dixon contends that FedEx fails to provide sufficient competent evidence to support its assertion that the amount in controversy exceeds $5 million. (Mot. 10–12.)

When a plaintiff contests the defendant's asserted amount in controversy, the defendant must establish the amount in controversy by a preponderance of evidence. *Dart Cherokee*, 574 U.S. at 88–89. The parties may support the amount in controversy by way of affidavits, declarations, or other summary-judgment-type evidence. *Ibarra,* 775 F.3d. at 1197.

Here, FedEx asserts the total amount in controversy for Ortiz-Dixon's missed meal period, missed rest break, and wage statement claims is $13,993,916. (NOR ¶ 46.) FedEx supports its calculations using employment data from its Human Resources Department ("HR") and calculations based thereon by economist Ariel Kumpinsky. (NOR Ex. E (Decl. Shea Winston ("Winston Decl.")) ¶¶ 9–11, ECF No. 1); NOR Ex. D (Decl. Ariel Kumpinsky ("Kumpinsky Decl.")) ¶¶ 4–9, ECF No. 1.)[3] Kumpinsky is the Director of Stout Consulting, holds a master's degree in

---

[2] FedEx also demonstrates that a 10% violation rate results in an amount in controversy that exceeds the jurisdictional threshold, using only the meal break, rest break, and wage statement claims. (Opp'n 11 (calculating the three claims at a 10% violating rate for a total of $6,897,392.50).)

[3] FedEx relies on declarations of Winston and Kumpinsky that were filed in a parallel wage-and-hour putative class action against FedEx, *Depina v. FedEx Ground Package System, Inc.*, Case No. 3:23-cv-156-TLT (N.D. Cal.). The parties acknowledge that the proposed class here may be subsumed by the class in *Depina*. (*See* Stip. Stay, ECF No. 25.) By extension, FedEx's employment

economics, a bachelor's degree in economics and business economics, and has twelve years of expertise in analyzing complex economic data, including employment-related data. (Kumpinsky Decl. ¶¶ 2–3.) The Court finds Kumpinsky's analysis credible based on his experience and education.

FedEx used the HR data and Kumpinsky's calculations to determine a reasonable violation rate, the number of shifts in issue, the number of wage statements in issue, minimum and average wage rates, and the applicable statutory penalty amount. (*See* Opp'n 5–6.) FedEx supports each of these figures with declaration testimony, and it calculates the amount in controversy using the supporting data and economist calculations. (NOR ¶¶ 27–29, 32–35, 43–45; Kumpinsky Decl. ¶¶ 7–9; Winston Decl.¶¶ 9–11.) This evidence is competent and sufficient to support FedEx's amount in controversy assertions. *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010) (holding that a declaration or affidavit may satisfy the burden of proving the amount in controversy by a preponderance of the evidence).

Finally, although Ortiz-Dixon argues otherwise, FedEx need not "produce business records setting forth the precise number of employees in [the] putative class . . . and the precise calculation of damages alleged to meet its burden regarding the amount in controversy." *See Long v. Destination Maternity Corp.*, No. 15-cv-2836-WQH-RBB, 2016 WL 1604968, at*6 (S.D. Cal. Apr. 21, 2016) (alterations in original; internal quotation marks omitted); s*ee also Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at*4–5 (E.D. Cal. May 1, 2007) ("There is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages . . . at this premature

---

data referenced in the *Depina* declarations applies to Ortiz-Dixon's allegations against FedEx here. In any event, FedEx also submits the Supplemental Declaration of Ariel Kumpinsky with its Opposition, in which Kumpinsky attests to the same employment data and analysis and specifically applies it to this case. (*See* Suppl. Decl. Ariel Kumpinsky ISO Opp'n ("Kumpinsky Suppl. Decl."), ECF No. 16-1.)

(pre-certification) stage of the litigation."). The evidence FedEx submits here is sufficiently competent to support its burden on removal.

### 3. Overinflated Shifts

Finally, Ortiz-Dixon contends that FedEx overinflates the total number of shifts in issue. (*See* Mot. 9.)

A defendant attempting to establish an amount in controversy by a preponderance of the evidence may do so based on assumptions, but those assumptions must be reasonable in light of the allegations. *Ibarra*, 775 F.3d. at 1199. Further, "when the defendant relies on a chain of reasoning that includes assumptions . . . , the chain of reasoning and its underlying assumptions must be reasonable." *LaCross*, 775 F.3d at 1201 (citing *Ibarra*, 775 F.3d at 1199).

Upon removal, FedEx initially calculated the amount in controversy using (a) 902,630 shifts over six hours (relevant to meal breaks), and (b) 1,965,362 shifts over three and a half hours (relevant to rest breaks), based on FedEx's business records. (NOR ¶¶ 27, 33.) Ortiz-Dixon challenges FedEx's use of the number of *shifts*, as opposed to the number of *workdays*, because multiple shifts can occur during the same workday. (Mot. 9.)

In response to Ortiz-Dixon's argument, FedEx revised its calculations to address her concerns. (Opp'n 10.) Kumpinsky recalculated the total number of shifts in issue by requiring at least twelve hours between shifts, to eliminate the possibility of multiple shifts being counted on the same day. (Kumpinsky Suppl. Decl. ¶¶ 6–7.) FedEx revised its estimated amount in controversy based on these reduced number of shifts: (a) 880,947 shifts over six hours (relevant to meal breaks) and (b) 1,920,668 shifts over three and a half hours (relevant to rest breaks). (Opp'n 10–11; Kumpinsky Suppl. Decl. ¶¶ 6–7.)

Ortiz-Dixon does not contest the reasonableness of FedEx's shift reductions and thus concedes the issue. (*See generally* Reply.) The Court finds FedEx's reduction to the estimated number of shifts in issue eliminates the possibility of multiple shifts on

the same day, making the underlying chain of reasoning behind these assumptions reasonable. Further, the reduction results in a more conservative estimate of total shifts in issue. As the assumptions are reasonable and based in FedEx's employment data, the Court finds that the reduced number of shifts FedEx uses to calculate the revised amount in controversy is not unreasonable or overinflated.

### B. Amount in Controversy

Having found the challenged assumptions reasonable and supported by competent evidence, all that remains is arithmetic. After reviewing the resulting calculations, the Court finds that Ortiz-Dixon's rest break claim alone satisfies the jurisdictional threshold. Therefore, the Court need not address the remaining claims.[4]

With respect to rest break violations, employers who fail to provide an employee the required rest period "shall pay the employee one additional hour of pay at the employee's regular rate of compensation" for each rest period not provided in a workday. Cal. Lab. Code § 226.7(c); *Naranjo v. Spectrum Sec. Servs.*, 13 Cal. 5th 93, 101 (2022). An employer is required to provide employees a ten-minute break every four hours or major fraction thereof, for all shifts of at least three and one-half hours. *Brinker Rest. Corp. v. Superior Ct*, 53 Cal. 4th 1004, 1029 (2012) (finding employees are entitled to ten minutes' rest for shifts from three and one-half to six hours in length). Thus, to determine the amount in controversy for a rest break violation, courts multiply the employee's hourly wage by the number of shifts that exceed three and a half hours, with number of shifts reduced by the reasonable violation rate. *See, e.g., Ogaz v. Honeywell Int'l, Inc.*, No. 5:21-cv-739-JFW (KKx), 2021 WL 2822401, at *5 (C.D. Cal. July 7, 2021) (calculating rest break claim amount in controversy by multiplying the number of shifts of four hours or more by the average hourly wage by 25% violation rate).

---

[4] *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 928 n.5 (9th Cir. 2019) (noting the district court need not calculate an amount in controversy beyond finding the jurisdictional threshold met).

9

Based on its employment records, FedEx determined that during FedEx's Calculation Period it employed at least 30,585 putative class members, (Kumpinsky Supple. Decl. ¶ 5), and these employees worked 1,920,668 shifts over three and a half hours, (*id.* ¶ 7). Although the *average* hourly wage of the employees during the FedEx's Calculation Period was $19.25, FedEx rests its amount in controversy calculations on the more conservative *minimum* hourly wage of $15.00. (*See id.* ¶ 8; Opp'n 5.) Using these figures, the amount in controversy for only the rest break claim during FedEx's Calculation Period is **$5,762,004** = (1,920,668 shifts x 20% violation rate) x $15.00 minimum hourly wage.

As this figure exceeds the jurisdictional threshold of $5 million, the Court concludes that it possesses CAFA subject matter jurisdiction over this action.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's Motion to Remand. (ECF No. 15.)

As the Court finds that it possesses subject matter jurisdiction, it **GRANTS** the Parties' Joint Stipulation, (ECF No. 25), and **STAYS** this action pending class certification in the prior-filed matter, *Depina v. FedEx Ground Package System, Inc.*, Case No. 3:23-cv-00156-TLT (N.D. Cal.). The Court sets a Status Conference Re: Status of *Depina* on **August 19, 2024, at 1:30 p.m.** Seven days before the Status Conference, the parties must submit a Joint Report updating the Court as to the status of *Depina* and whether the stay in this action should remain in place.

**IT IS SO ORDERED.**

December 7, 2023

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**